**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| AMAZON.COM, INC., ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00682-AJT-IDD |
| ) | |
| STRAIGHT PATH IP GROUP, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPENING CLAIM CONSTRUCTION BRIEF OF AMAZON.COM, INC.**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION..................................................................................5

II. APPLICABLE LAW GOVERNING CLAIM CONSTRUCTION.......................5

III. THE PATENTS-IN-SUIT.......................................................................6

IV. DISPUTED CLAIM TERMS...................................................................8

    A.   "network protocol address"..........................................................8

    B.   "point-to-point communication" and related terms...................11

    C.   "unique identifier of the first process".....................................13

    D.   "address server" and related terms..........................................15

    E.   "Program code" and "program logic" claim limitations...........17

        1.   "program code, responsive to the network protocol address of a second process, for establishing a point-to-point communication link between the first process and the second process over the computer network" and related terms........................................................19

        2.   "program code for generating a user-interface enabling control of a first process" and related terms..................21

        3.   "program code responsive to the currently assigned network protocol address of the first process, for establishing a communication connection with the server process and for forwarding the assigned network protocol address of the first process and a unique identifier of the first process to the server process upon establishing a communication connection with the server process" and related terms.................22

        4.   "program code, responsive to user input commands, for establishing a point-to-point communications with another process over the computer network" and related terms................................................................................24

5.     "program code for transmitting, from the first process to the server process, a query as to whether the second process is connected to the computer network" and related terms ................................................................................. 26

6.     "program code for determining the currently assigned network protocol address of the first process upon connection to the network" ........................................................... 27

7.     "program code, responsive association [*sic*] of the element representing the first callee process with the element representing the communication line having a temporarily disabled status, for temporarily disabling the point-to-point communication link between the caller process and the first callee process" ................................... 29

V.     CONCLUSION ..................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aventis Pharm. Inc. v. Amino Chems. Ltd.*,
   715 F.3d 1363 (Fed. Cir. 2013)........................................................................6

*Every Penny Counts, Inc. v. Am. Express Co.*,
   563 F.3d 1378 (Fed. Cir. 2009)...........................................................10, 15, 17

*Funai Elec. Co.. v. Daewoo Elecs. Corp.*,
   616 F.3d 1357 (Fed. Cir. 2010)......................................................................11

*Innovative Commc'ns Techs., Inc. v. Vivox, Inc.*,
   No. 12-cv-00009-RGD-TEM (E.D. Va. Oct. 26, 2012), Dkt. No. 48 ......................5

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp.*,
   554 F.3d 1010 (Fed. Cir. 2009)...............................................................10, 15

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
   324 F.3d 1308 (Fed. Cir. 2003)...........................................................23, 28, 29

*Media Rights Techs. v. Capital One Fin. Corp.*,
   800 F.3d 1366 (Fed. Cir. 2015)...............................................................28, 30

*MySpace, Inc. v. GraphOn Corp.*,
   672 F.3d 1250 (Fed. Cir. 2012)........................................................................5

*Net2Phone, Inc. v. EBay, Inc., et al.*,
   No. 06-cv-02469-KSH-PS (D.N.J. Aug. 30, 2007), Dkt. No. 97 .........................10

*Netcraft Corp. v. eBay, Inc.*,
   549 F.3d 1394 (Fed. Cir. 2008)......................................................................13

*Network Commerce, Inc. v. Microsoft Corp.*,
   422 F.3d 1353 (Fed. Cir. 2005)...............................................................14, 17

*Noah Sys., Inc. v. Intuit Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012)..................................................................6, 30

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)........................................................................6

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)........................................................................6

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Robert Bosch, LLC v. Snap-On Inc.*,
  769 F.3d 1094 (Fed. Cir. 2014)............................................................................................19

*Trs. of Columbia Univ. v. Symantec Corp.*,
  811 F.3d 1359 (Fed. Cir. 2016)..............................................................................................6

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015)....................................................................... *passim*

## STATUTES

35 U.S.C. § 112............................................................................................................ *passim*

Pursuant to the Revised Joint Proposed Discovery Plan entered on September 18, 2017 (Dkt. Nos. 97, 108), Amazon.com, Inc. respectfully submits this opening brief in support of its claim construction positions. In this case, Straight Path IP Group, Inc. asserts 23 claims from three patents.[1] The parties dispute constructions of eleven terms or groups of terms.

## I.  INTRODUCTION

The Court has already construed the asserted patents and concluded that they "disclose an invention concerning internet telephony technology, also known as Voice Over Internet Protocol ('VoIP')." *Innovative Commc'ns Techs., Inc. v. Vivox, Inc.*, No. 12-cv-00009-RGD-TEM (E.D. Va. Oct. 26, 2012), Dkt. No. 48 (Ex. D[2]) at 1. Now, however, Straight Path seeks to read its internet *telephony* patents on Amazon's streaming video technology. To do so, Straight Path jettisons claim constructions it advocated in past litigation, in favor of "plain and ordinary meaning" non-constructions that would permit it to argue claim construction to the jury. It also attempts to construe the functional "program code" and "program logic" limitations without reference to the actual structures disclosed in the patents for performing those functions, as required by 35 U.S.C. § 112, ¶ 6. The Court should adopt Amazon's proposals, which parallel the Court's prior constructions of the disputed terms and comport with the specification and the claims.

## II.  APPLICABLE LAW GOVERNING CLAIM CONSTRUCTION

When construing claims, courts must consider "what was invented, and what exactly was claimed." *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1256 (Fed. Cir. 2012). "An inventor is entitled to claim in a patent what he has invented, but no more." *Id.* Though the Court need not

---

[1] Straight Path asserts claims 1, 11, 12, 16, 19, 22, 23, 27, 30, and 31 of U.S. Patent No. 6,108,704 (the "'704 patent"), claims 6, 8, 10, 11, 13, and 14 of U.S. Patent No. 6,131,121 (the "'121 patent"), and claims 3, 6, 9, 10, 14, 17, and 18 of U.S. Patent No. 6,009,469 (the "'469 patent").

[2] All exhibits are to the Declaration of Laura Anne Kuykendall in Support of Amazon's Opening Claim Construction Brief.

construe every claim term, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Claim construction analysis begins "by considering the language of the claims themselves." *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016). "The specification is the 'single best guide to the meaning of a disputed term,' and 'is, thus, the primary basis for construing the claims.'" *Id.* (internal citations omitted). The court should also consider the patent's prosecution history, including the prosecution history of related patents. *Id.* at 1362-63; *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1375 (Fed. Cir. 2013). Finally, a court may also consider extrinsic evidence, such as expert testimony. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-19 (Fed. Cir. 2005).

A patentee may claim a means for performing a function without reciting any structure for performing the function in the claim. *See* 35 U.S.C. § 112, ¶ 6. These "means-plus-function" elements are limited to the structure in the specification that performs the function. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311-12 (Fed. Cir. 2012). A claim term need not recite the word "means" to be governed by this section. Indeed, "§ 112, para. 6 will apply [to functional claim limitations] if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). Computer-implemented means-plus-function limitations must disclose an algorithm to meet the definiteness requirements of § 112, ¶ 2. *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1337 (Fed. Cir. 2014).

III.    **THE PATENTS-IN-SUIT**

The patents-in-suit largely share the same specification and are each directed to establishing "point-to-point communications" over the Internet between two computers with

dynamically assigned IP addresses, through the use of a central address server.  (*See, e.g.*, Ex. A ('704 patent) at Abstract.)

The '704 patent, is entitled "Point-to-Point Internet Protocol" and was filed on September 25, 1995 and issued on August 22, 2000.  The '469 and '121 patents are continuations-in-part of and claim priority to the '704 patent.  The '121 patent, is entitled "Point-to-Point Computer Network Communication Utility Utilizing Dynamically Assigned Network Protocol Addresses" and issued on October 10, 2000.  The '469 patent, is entitled "Graphic User Interface for Internet Telephony Application" and issued on December 28, 1999.  The patents all purport to describe a WebPhone system and related software sold by NetSpeak Corporation in the mid-1990's.  (*See* Ex. A at 3:6-10; Ex. B ('121 patent) at 14:45-18:17 (describing "WebPhone Application")).) Indeed, the Court already determined that these patents deal with internet telephony technology. (Ex. D at 1.)

According to the specification, prior art methods of establishing "point-to-point" communications over the Internet were impractical when the initiating computer (referred to in the patents as the "first process," "first processing unit," or "caller process") did not know the Internet Protocol (IP) address of the computer to call ("second process" or "callee process").  (Ex. A at 1:48-56; Ex. B at 2:32-53; Ex. C ('469 patent) at 2:30-50.)  That occurs when, for example, the second device does not have a permanent IP address but instead receives a different dynamically-assigned IP address each time it connects to the Internet.  (*Id.*)

The purported solution of the patents is to use an intermediate server (referred to as a "connection server" in the specification, and a "server," "server process" or "address server" in the asserted claims) that stores the current IP address of each connected process.  The calling process queries this server for the IP address of the callee process, which it can then use to establish

a point-to-point communication link with the callee process, e.g., to facilitate a web-based telephone call. The patents generally claim the following steps: (1) a first processing unit, upon connecting to a computer network, determines its assigned IP address, and automatically transmits its e-mail address and IP address to a connection server; (2) the connection server stores the addresses in a database and, thus, the first processing unit is established as an active on-line party available for communication; (3) the first processing unit sends a query requesting the on-line status and current IP address of a callee process to the connection server, which searches the database to determine whether the second processing unit is active and on-line; (4) if the callee is active and on-line, the connection server sends the IP address of the callee from the database to the first processing unit; and (5) the first processing unit then establishes the point-to-point internet communication with the callee using the retrieved IP address. (Ex. A at Abstract & cl. 1; Ex. B at cl. 6; Ex. C at cl. 9.)

## IV. DISPUTED CLAIM TERMS

### A. "network protocol address"[3]

| Claim Term | Amazon Construction | Straight Path Construction |
|---|---|---|
| "network protocol address"<br><br>('704 patent cls. 1, 11, 16, 22, 27, '121 patent cls. 6, 8, 10, 11, 13, 14, '469 patent cls. 1, 2, 3, 5, 9, 14) | "the information necessary to direct data to a particular device or process on a computer network, which acts as a pointer to the device or process associated with that address" | Plain and Ordinary Meaning |

Amazon proposes a construction of this term that is rooted in the language of the claims and consistent with the purpose of the claimed inventions. The term "network protocol address" does not appear in the '704 patent's specification; instead, the specification refers to "IP address"

---

[3] A table identifying each disputed term and the parties' proposed constructions is provided in Appendix A.

throughout. The term "network protocol address" otherwise occurs only in the claims. In the '121 and '469 patents, the term is used in the abstract and a description of one embodiment, in both cases paraphrasing the language of the claims.

As described above, the patents-in-suit purport to disclose a means for one process to learn the "network protocol address" of another process in order to establish a point-to-point communication link. (Declaration of David B. Johnson, Ph.D ("Johnson Decl.") ¶ 17; Ex. A at Abstract; *see also, e.g.*, *id.* at 1:59 2:21 ("Summary of the Invention").) For example, in claim 1 of the '704 patent, (i) the first process transmits its "network protocol address" to the server (referred to in the '121 patent as the "address server" and in the '469 patent as the "server process"); (ii) the first process queries the server to determine whether the second process "is connected to the computer network"; and (iii) upon receiving a reply from the server with the "network protocol address" of the second process, the first process establishes a "point-to-point" communication link over a computer network to that other process. (Johnson Decl. ¶ 17; Ex. A at cl. 1.) Until the server transmits the "network protocol address" of the second process to the first process, the point-to-point communication cannot be established and data cannot be directed to the second process. (Johnson Decl. ¶ 17.) The purpose of the claimed inventions is to locate a particular computer process in order to direct communications to it. To do so, the claims recite a server that uses a "network protocol address" of a computer process as a "pointer" to locate the process and facilitate communication. In the case of the Internet—the only example described throughout the patents—the "network protocol address" required to establish the "point-to-point" communication is the Internet Protocol or IP address. (*See* Ex. B at 2:42-54 (describing "[t]he ability to locate users having temporary or dynamically assigned Internet Protocol address[es]" as the problem the patents purport to solve); Johnson Decl. ¶ 18.) Amazon's proposed construction,

consistent with the purpose of the patents and the use of the term in the claims, defines the "network protocol address" as "information necessary to direct data to a particular device or process on a computer network, which acts as a pointer to the device or process associated with that address."

Indeed, this is precisely what Straight Path's predecessor-in-interest, Net2Phone, Inc., said the term meant when it first asserted the patents against Skype: "A 'Network Protocol Address' is the information necessary to direct data to a particular device or process on a computer network, which acts as a pointer to the device or process associated with that address." (Ex. E (Opening Claim Construction Brief of Net2Phone, Inc. in *Net2Phone, Inc. v. EBay, Inc., et al.*, No. 06-cv-02469-KSH-PS (D.N.J. Aug. 30, 2007), Dkt. No. 97 at 13.)

Straight Path argues against the very construction advocated by the original patentee, asserting that the term should not be construed.[4] But failing to construe the term here would be improper for two reasons.

First, here the parties have a material dispute over the meaning of the term. Straight Path contends that the construction the patentee previously proposed, and Amazon has adopted here, is *not* the "plain and ordinary meaning," yet it has not provided an alternative plain and ordinary meaning. If the Court declines to construe the term, Straight Path will argue the meaning of the term—a meaning it has not yet articulated—to the jury in the guise of expert testimony, which Federal Circuit law forbids. *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury."); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp.*, 554 F.3d 1010, 1027 (Fed. Cir.

---

[4] Straight Path may point to the Court's earlier claim construction order, in which the Court noted that a lay person would understand the customary meaning of "network protocol address." (Ex. D at 17.) However, the plaintiff in that case did not provide Judge Doumar with the definition proposed by the patentee in the Skype case.

2009) ("It is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'") (quoting *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172-73 (Fed. Cir. 2005)).

Second, though the meaning of "network protocol address" to one of ordinary skill in the art in the mid-1990's may be readily apparent to a computer scientist, it will not be familiar to a lay juror. (Johnson Decl. ¶ 19.) *See Funai Elec. Co.. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1366 (Fed. Cir. 2010) ("The criterion [in deciding whether to construe a term] is whether the explanation aids the court and the jury in understanding the term as it is used in the claimed invention."). Amazon's proposed construction clearly sets out the requirements of the claimed "network protocol address"—that it both identify a particular device or process and include the information necessary to locate that device on the network so that data can be directed to it—in a way that the jury will be able to easily understand and apply.

The Court should therefore adopt Amazon's proposed construction, which is consistent with the claim language and the purpose of the claimed inventions, and is exactly how the patentee itself defined the term.

### B. "point-to-point communication" and related terms

| Claim Term | Amazon Construction | Straight Path Construction |
|---|---|---|
| "point-to-point communication[s]" ('704 patent, cls. 1, 11, 16, 22, 27, 31, '121 patent, cls. 6, 8, 10, 11, 13, 14, '469 patent, cls. 3, 9, 14)<br><br>"establishing[ing] a point-to-point communication[s]" ('121 patent, cl. 10, '469 patent, cl. 9)<br><br>"establish[ing] a point-to-point communication link" | "[establishing a] communication between two processes, established by one of the processes using the IP or network protocol address of the other process, that is not intermediated by the [server process / address server / directory database]" | "[establishing a] communication between two processes that is not intermediated by the [server process / address server / directory database]" |

| Claim Term | Amazon Construction | Straight Path Construction |
| --- | --- | --- |
| ('704 patent, cls. 1, 11, 22, 31, '121 patent, cls. 6, 8, 11, 13, 14, '469 patent cl. 3)<br><br>"point-to-point communication link"<br>('704 patent, cls. 16, 27) | | |

Amazon's proposed construction is identical to the Court's construction of the term "point-to-point communication" in *Straight Path IP Group, Inc. v. Bandwidth.com, Inc.*, No. 13-cv-00932-AJT-IDD, Dkt. No. 107 (E.D. Va. Feb. 25, 2014). (Ex. F at 14-15.) The parties dispute whether or not the point-to-point communication must be "established by one of the processes using the IP or network protocol address of the other process," as the Court held in the *Bandwidth* case. In that case, the Court construed the claims of U.S. Patent Nos. 6,513,066 (the "'066 patent") and 6,701,365 (the "'365 patent"), both of which claim priority to the '704 patent and share a similar specification. Some, but not all, of the claims of the '066 patent required the use of an "IP address" of the "second processing unit" or "second unit" to establish point-to-point communications with the first processing unit. (*See, e.g.*, Ex. G ('066 patent) at cl. 1.) The claims of the '365 patent, like the patents at issue here, recited the use of a "network protocol address." (*See* Ex. H ('365 patent) at cl. 1.) Reviewing the "Summary of the Invention" of the shared specification of the '066 and '365 patents—the same text that appears in the '704 patent—the Court concluded that "[t]he crux of the invention, then, is *furnishing the IP address* of one processing unit to another processing unit to allow the processing units to communicate directly with one another." (Ex. F at 11 (emphasis added).) Thus, the Court construed "point-to-point communication" to require the use of an IP address or network protocol address of the other process.

Straight Path's proposed construction eliminates this requirement by deleting the phrase

"established by one of the processes using the IP or network protocol address of the other process" from the Court's construction. In doing so, Straight Path drops a central feature of the invention: the use of a "network protocol address" to identify a specific computer or process that receives data from the other process. (Johnson Decl. ¶ 21.) Because the patents describe the claimed "point-to-point communication" as requiring a "network protocol address" or IP address to identify a computer or process, and disclose no alternative means of performing a point-to-point communication *without* a "network protocol address" or IP address, the Court should reaffirm its prior construction. *See Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1399 (Fed. Cir. 2008) (affirming construction of "communications link" as requiring internet access, based on the specification's description that the invention related to internet access and because it failed to describe any other alternatives).

C. **"unique identifier of the first process"**

| Claim Term | Amazon Construction | Straight Path Construction |
|---|---|---|
| "a unique identifier of the first process"<br><br>('469 patent, cl. 1) | "an identifier that serves to distinguish the first process from all other processes registered with the server" | Plain and Ordinary Meaning |

The term "a unique identifier of the first process" is recited in asserted claim 1 of the '469 patent. That claim requires "program code . . . of the first process, for establishing a communication connection with the server process and for forwarding . . . a unique identifier of the first process to the server process." (Ex. C at RE 1:41-47.) In the patent, when the first process initiates a call to the second process, it sends a query, including the email address of the callee, to the connection server, requesting the location of the second process. (*Id.* at 7:30-31.) The email address is the "unique identifier" of the callee. The connection server searches the database to determine whether the callee is logged-in by finding stored information corresponding to the

callee's email address, indicating that the callee is online. (*Id.* at 7:32-35.) If the server determines that the callee is online, it retrieves the IP address of the callee and sends it to the first processing unit so that it can establish a point-to-point communication. (*Id.* at 7:35-43.) The specification and claims make clear that the "unique identifier" is distinct from the "network protocol address." (*Id.* at 6:66-7:3, RE 1:43-44.)

To function as claimed and described in the specification, the "unique identifier" must be unique among all processes that may be registered with the server process. (Johnson Decl. ¶ 24.) The "unique identifier," once time stamped and registered with the server, allows the server to determine whether a particular process is active and on-line and, thus, available for a point-to-point communication. (*Id.*) Without the ability to distinguish one process from another, the server would not be able to determine if the parties were available for a point-to-point communication, thus defeating the purpose of the patent. The original patentee agreed, arguing for the same requirement: "the identifier referenced in the claims must allow the system to distinguish among the on-line entities." (Ex. I (Plaintiff Net2Phone, Inc.'s Reply On Claim Construction) at 10.)

Yet, in this case, Straight Path abandons this distinction and instead seeks a "plain and ordinary meaning" non-construction. That would be improper here, because a "unique identifier of a first process" does not have a commonly understood meaning in the art, and a practitioner of ordinary skill would not have a clear understanding of the term without further guidance. (Johnson Decl. ¶ 23.); *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1359 (Fed. Cir. 2005) (disputed claim term cannot be construed based on ordinary and customary meaning if it has no commonly understood meaning). For example, the term "unique" when used in the relevant art could have a different meaning depending on context. (Johnson Decl. ¶ 23.) It could be unique among some limited population, or it may be unique among all instances in a universe (*i.e.,*

globally unique).  (*Id.*)  Similarly, something may be "unique" at some specific instant in time, or it may be "unique" at all times.  (*Id.*)  Moreover, as Straight Path has not provided a construction that corresponds to the plain and ordinary meaning of the term, it will inevitably present claim construction argument to the jury through its expert if the Court does not construe the term now. The Court should therefore construe the term "unique identifier of a first process" in accordance with Amazon's proposal.  *Every Penny Counts, Inc.*, 563 F.3d at 1383 (questions of claim scope should not be left to the jury); *Kinetic Concepts, Inc.*, 554 F.3d at 1027 (risk of jury confusion when experts opine on claim construction).

### D.    "address server" and related terms

| Claim Term | Amazon Construction | Straight Path Construction |
|---|---|---|
| "address server" ('121 patent, cls. 6, 8, 10, 13)  "server" / "server process" ('704 patent, cls. 1, 11, 22, '121 patent, cls. 6, 8, 10, 11, 13, 14, '469 patent, cls. 1, 3, 5, 6, 9) | "a server that stores and provides the network protocol address of a process that is connected to the computer network at the time that the query is transmitted to the server" | Plain and Ordinary Meaning |

Amazon's construction is consistent with the claims, the specification, and the purpose of the claimed inventions.  As described above, the patents-in-suit disclose a means for one process to learn the "network protocol address" of another process, in order then to be able to establish a point-to-point communication link.  (*See, e.g.*, Ex. A at Abstract; *see also, e.g.*, *id.* at 1:59-2:21 ("Summary of the Invention"); Johnson Decl. ¶ 26.)  The "address server" or "server" is at the heart of this purported invention.  This server stores the "network protocol address" corresponding to the various processes, such that one process can learn the address of another through a query to the server.   (Johnson Decl. ¶ 27.)  This is a prerequisite to establishing the point-to-point communication link.  (*Id.*)  Amazon's proposed construction reflects this functionality and the use of these terms in the patents-in-suit.

The prosecution history confirms that Amazon's construction is correct. For example, in a September 10, 1999 amendment to the '121 patent, the applicants argued that the claimed invention offered the following solution:

> The dedicated address directory server *maintains a compilation or list of entries*, each of which contain a process identifier and the corresponding network protocol address forwarded to the server by the process itself. Other processes wishing to contact a desired target process simply *query the address directory server to determine whether the target process is on-line and the current network protocol address at which the target process is located*. The server forwards the network protocol address of the target process to the querying process.

(Ex. J ('121 patent file history, September 10, 1999 Amendment) at 19-20 (emphases added).) In other words, the applicants stressed that the "address server" stores the network protocol address of a process and provided it to another process to facilitate a point-to-point communication.

The applicants repeatedly represented to the Patent Office that the use of a "dedicated server" that provides a centralized address directory was the key to the invention. During prosecution of the '704 patent the applicants explained:

> Applicants' invention solves a fundamental problem associated with the Internet. . . . The problem is: How can a global network user be located if he/she has no permanent network address? Applicants have disclosed a solution to the above-described problem. The solution utilizes a client/server system. In the disclosed system, a client process contacts a *dedicated address directory server* and forwards to the server the network protocol address to which it has been assigned upon connection to the computer network, along with other identification information. The *dedicated address directory server* maintains a compilation or list of entries, each of which contain a process identifier and the corresponding network protocol address forwarded to the server by the process itself. Other processes wishing to contact a desired target process simply query the address directory server to determine whether the target process is on-line and the current network protocol address at which the target process is located.

(Ex. K ('704 patent file history, March 4, 1999 Amendment) at 14 (emphases added); *see also* Ex. L ('704 patent file history, December 4, 1997 Amendment) at 8 (characterizing invention as "utiliz[ing] a dedicated server which acts as a network address/information directory from which calling processes can obtain information."); Ex. J ('121 patent file history, September 10, 1999

Amendment) at 19 ("[A] client process contacts a *dedicated address directory server* and forwards to the server the network protocol address to which it has been assigned upon connection to the computer network . . . . The *dedicated address directory server* maintains a compilation or list of entries, each of which contain a process identifier and the corresponding network protocol address forwarded to the server by the process itself.") (emphases added).) Amazon's proposed construction accurately captures these functions.

Straight Path again proposes a "plain and ordinary meaning" non-construction. But the term "address server" has no commonly-understood meaning to one of ordinary skill in the art. (Johnson Decl. ¶ 28.) The term must therefore be construed. *Network Commerce, Inc.*, 422 F.3d at 1359.

And again, if the Court adopts Straight Path's proposed "plain and ordinary meaning" construction, the parties' experts will have to provide the jury with competing meanings of the term, which the Federal Circuit has expressly proscribed. *Every Penny Counts, Inc.*, 563 F.3d at 1383. The Court should therefore adopt Amazon's proposed construction.

### E.     "Program code" and "program logic" claim limitations

The Federal Circuit recently clarified the standard for invoking § 112, ¶ 6 for means-plus-function claims that do not literally recite the word "means." It abandoned the presumption against application of § 112, ¶ 6 in favor of a flexible test that looks to the functional nature of the claims rather than the word choice of the drafter. *See Willamson*, 792 F3d. at 1349. This new test asks "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* A claim term that does not recite the word "means" may still be governed by § 112, ¶ 6 if it does not "recite sufficiently definite structure" or recites a "function without reciting sufficient structure for performing that function." *Id.* (citations omitted).

The asserted claims of the patents-in-suit recite "program code for" performing, "program logic for" performing, "program code configured to" perform, or "program logic configured to" perform a recited function. These "program code" and "program logic" terms do not recite sufficiently definite structure for performing the claimed functions. (Johnson Decl. ¶¶ 30, 33, 36.) There is no other disclosure in the claims that would distinguish the claimed "program code/logic" from generic software, and therefore, the terms lack sufficient definite meaning as the name for structure, much less sufficient structure to perform the recited functions. *Id.* The sheer number and variety of claimed functions performed by "program code" or "program logic" illustrates that these terms are nothing more than generic placeholders. They are nonce words used in place of "means." The Federal Circuit has made clear that such generic terms are subject to § 112, ¶ 6. *Williamson*, 792 F.3d at 1350.

Courts applying *Williamson* have construed "program code" and similar terms under § 112, ¶ 6. In *Zeroclick LLC v. Apple Inc.*, the court held that claim limitations reciting the terms "program" and "user interface code" were governed by § 112, ¶ 6. No. 15-cv-04417-JST, 2016 WL 5477115, at *4-6 (N.D. Cal. August 16, 2016). The *Zeroclick* court held that the claim limitation "program that can operate" did not "recite any structure whatsoever, let alone 'sufficiently definite structure.'" *Id.* at *4 (citing *Williamson*, 792 F.3d at 1349; 1351-52). In *Global Equity Management (SA) Pty. Ltd. v. Expedia, Inc.*, the court held that the claim terms "program code for" manipulating, modifying, and configuring partitions using a graphical user interface were "defined only by the function that [they] perform[ed]" and did not describe "[h]ow the code interacts with other code or structure of the claimed invention." No. 16-cv-95-RWS-RSP, 2016 WL 7416132, at *29-33 (E.D. Tex. Dec. 22, 2016) ("*GEMSA*"). The *GEMSA* court thus construed the terms according to § 112, ¶ 6, and, finding no corresponding structure in the

specification, found the claims invalid as indefinite. *Id.*

Like the terms in *Zeroclick* and *GEMSA*, the "program code/logic" terms here are written in the same format as a traditional means-plus-function limitation, merely replacing the words "means for" with "program code/logic for" or "program code/logic configured to" and then reciting a function performed by the "program code/logic." These terms connote no more structure than the word "means," and serve as black boxes designated to perform the specified function. *Williamson*, 792 F.3d at 1350; s*ee also Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014) (a term that "refers only to a general category of whatever may perform specified functions" does not identify sufficient structure to avoid § 112, ¶ 6). Thus, "program code/logic for" and "program code/logic configured to" are exactly the kind of functional limitations that the Federal Circuit sought to bring within the scope of § 112, ¶ 6.

Because the "program code/logic" limitations are drafted in functional terms, without reciting any structure that would distinguish the claimed "program code/logic" from a general purpose computer program, the claim terms are properly governed by § 112, ¶ 6.

> **1.** **"program code, responsive to the network protocol address of a second process, for establishing a point-to-point communication link between the first process and the second process over the computer network" and related terms**

The term "program code, responsive to the network protocol address of a second process, for establishing a point-to-point communication link between the first process and the second process over the computer network" and similar variations are recited in claim 2 of the '469 patent; claim 1 of the '704 patent; and claims 6, 8, 13, and 14 of the '121 patent.[5] These limitations should

---

[5] The variations are: "program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network" ('704 patent, claim 1); "program code, configured to respond to the network protocol address of the second process, establish a point-to-point communication link with the second process over the computer network" ('121 patent, claim 6);

be construed according to § 112, ¶ 6 because they recite a function without sufficient structure for performing that function. (Johnson Decl. ¶¶ 29-30.) Here, the function is: "in response to the network protocol address of a second process, establishing a point-to-point communication link between the first process and the second process over the computer network." (*Id.* ¶ 31.) Straight Path's proposed construction modifies the functional claim language: "responsive to a network protocol address of the second process, establishing point-to-point communications between the first and second process over the computer network." (Ex. M (Straight Path IP Group's Supplemental Identification of Proposed Claim Term Constructions) at 7.) Amazon is agreeable to either proposed construction, but believes its proposal more closely captures the functional language recited in the claim.

The recited function does not itself disclose structure to one of ordinary skill in the art. (Johnson Decl. ¶ 30.) And, as explained above, the terms "program code for" and "program logic for" are nonce phrases used in place of "means" that do not specify sufficient structure for performing the claimed function. *Williamson*, 792 F.3d at 1348-49; *GEMSA*, 2016 WL 7416132, at *29-30; (Johnson Decl. ¶ 30.) The specifications of the patents-in-suit provide the following corresponding structure for performing the claimed function:

> For callee (or called) processing units with fixed IP addresses, *the caller (or calling) processing unit may open a "socket"*, i.e. a file handle or address indicating where data is to be sent, and *transmit a <Call> command to establish communication with the callee utilizing*, for example, datagram services such as Internet Standard network layering as well as transport layering, which may include a Transport

---

"program logic configured to, in response to the network protocol address of the second process, establish a point-to-point communication link with the second process over the computer network" ('121 patent, claim 8); "program logic, responsive to the network protocol address of the second process, and configured to establish a point-to-point communication link between the first process and the second process over the computer network" ('121 patent, claim 14); and "program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network" ('121 patent, claim 13).

> Control Protocol (TCP) or a User Datagram Protocol (UDP) on top of the IP. Typically, a processing unit having a fixed IP address may maintain at least one open socket and a called processing unit waits for a <Call> command to assign the open socket to the incoming signal. If all lines are in use, the callee processing unit sends a BUSY signal or message to the caller processing unit.

(Ex. A at 5:1-13; Ex. B at 6:37-50; Ex. C at 6:43-56 (emphasis added); Johnson Decl. ¶ 31.) A person of ordinary skill would therefore understand the structure for performing the claimed function as "the first processing unit opens a socket and transmits a <Call> command." (Johnson Decl. ¶ 31.) Straight Path does not identify a corresponding structure for this function. Instead, it cites several sections of the patents-in-suit without explaining how these disclosures actually show a particular structure. (Ex. M at 7 (citing *e.g.*, '704 patent at 5:55-67, 6:25-7:31, 8:18-22, Fig. 4, Fig. 8 at blocks 68-72, and 10:28-37).) Therefore, the structure is properly construed as "the first processing unit opens a socket and transmits a <Call> command." (Johnson Decl. ¶ 31.)

### 2. "program code for generating a user-interface enabling control of a first process" and related terms

The term "program code for generating a user-interface enabling control of a first process" and variations on this term are recited in claim 1 of the '469 patent and claims 21, 23, and 27 of the '704 patent.[6] These limitations should be construed according to § 112, ¶ 6 because they recite a function without sufficient structure for performing that function. (Johnson Decl. ¶¶ 32-33.) The function is: "generating a user-interface enabling control of a first process / generating an element representing a [first/second] communication line [having a temporarily disabled status]." (*Id.* ¶ 34.) Straight Path appears to agree that this is the appropriate function, assuming this term is governed by § 112, ¶ 6. (Ex. M at 3.)

---

[6] Variations: "program code for generating an element representing a first communication line" ('704 patent, claim 21); "program code for generating an element representing a second communication line" ('704 patent, claim 23); and "program code for generating an element representing a communication line having a temporarily disabled status" ('704 patent, claim 27).

The function recited in this claim does not disclose structure to one of ordinary skill in the art. (Johnson Decl. ¶ 33.) As explained above, the "program code for" term is a nonce phrase used in place of "means" that does not specify sufficient structure for performing the claimed function. *Williamson*, 792 F.3d at 1348-49; *GEMSA*, 2016 WL 7416132, at *29-30; (Johnson Decl. ¶ 33.) The specifications of the patents-in-suit provide corresponding structure for performing the claimed function. (Ex. C at Figs. 13A, 14, 18A-D, 15:17-49, 26:39-30:18, and 30:19-31-15.) In view of these disclosures, the structure is properly construed as: "the graphical user interface of the WebPhone system." (Johnson Decl. ¶ 34.) Straight Path does not dispute this construction, citing among other things, the '469 patent at 30:22-33, which describes the "WebPhone GUI." (Ex. M at 3-4.)

3. **"program code responsive to the currently assigned network protocol address of the first process, for establishing a communication connection with the server process and for forwarding the assigned network protocol address of the first process and a unique identifier of the first process to the server process upon establishing a communication connection with the server process" and related terms**

The term "program code responsive to the currently assigned network protocol address of the first process, for establishing a communication connection with the server process and for forwarding the assigned network protocol address of the first process and a unique identifier of the first process to the server process upon establishing a communication connection with the server process" and similar variations are recited in claim 1 of the '469 patent; claim 1 of the '704 patent; and claims 6, 8, and 14 of the '121 patent.[7] These limitations should be construed according to

---

[7] Variations: "program code for transmitting to the server a network protocol address received by the first process following connection to the computer network"('704 patent, claim 1); "program code configured to, following connection of the first process to the computer network, forward to the server process a network protocol address at which the first process is connected to the computer network" ('121 patent, claim 6); "program logic configured to, following connection of the first process to the computer network forward to the address server a network, protocol address at which the first process is connected to the computer network" ('121 patent, claim 8);

§ 112, ¶ 6 because they recite a function without sufficient structure for performing that function.

(Johnson Decl. ¶¶ 35-36.)  Here, the function is:

> [I]n response to the currently assigned network protocol address of the first process, establishing a communication connection with the server process and forwarding the assigned network protocol address of the first process and a unique identifier of the first process to the server process upon establishing a communication connection with the server process / establishing a communication connection with the directory server process once the assigned network protocol of the first process is known / transmitting to the server a network protocol address received by the first process following connection to the computer network / forwarding to the [address] [server process/ network] a network protocol address at which the first process is connected to the computer network.

(Johnson Decl. ¶ 37.)  Straight Path omits portions of the functional claim language in arguing that the functions are "(1) Forwarding a dynamically assigned network protocol address to a server process" and "(2) Forwarding a dynamically assigned network protocol address and unique identifier to a server process."  (Ex. M at 4-5.)  For example, Straight Path omits the functional language "responsive to the currently assigned network protocol address of the first process" and "establishing a communication connection with the server process."  (Johnson Decl. ¶ 37.)  The Court should reject Straight Path's proposal and adopt Amazon's, which accounts for all of the claimed functional language.  *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003) ("[T]he function [may not] be improperly broadened by ignoring the clear limitations contained in the claim language. The function of a means plus function claim must be construed to include the limitations contained in the claim language.").

The function recited in these claims does not itself disclose structure to one of ordinary skill in the art.  (Johnson Decl. ¶ 36.)  For the reasons discussed above, the "program code for" and "program code/logic configured to" terms are nonce phrases used in place of "means" that do

---

and "program logic configured to transmit to the server a network protocol address received by the first process following connection to the computer network" ('121 patent, claim 14).

not specify sufficient structure for performing the claimed function. *Williamson*, 792 F.3d at 1348-49; *GEMSA*, 2016 WL 7416132, at *29-30; (Johnson Decl. ¶ 36.) The specifications of the patents-in-suit provide the following corresponding structure for performing the claimed function:

> When either of processing units 12, 22, logs on to the Internet via a dial-up connection, the respective unit is provided a dynamically allocated IP address by an Internet service provider.

> Upon the first user initiating the point-to-point Internet protocol when the first user is logged on to the Internet 24, the first processing unit 12 automatically transmits its associated E-mail address and its dynamically allocated IP address to the connection server 26.

(Ex. C at 6:62-7:3, Ex. A at 5:21-28, Ex. B at 6:56-64; Johnson Decl. ¶ 37.) One of ordinary skill would therefore know that the structure for performing the claimed function is "the first processing unit automatically transmitting its associated E-mail address and its dynamically allocated IP address to the connection server." (Johnson Decl. ¶ 37.) Straight Path does not dispute this structure, citing the excerpt from the patents above as corresponding structure. (Ex. M at 4-5.) Straight Path additionally relies on the transmission by the WebPhone client of an <ONLINE REQ> packet to a connection server as corresponding the structure. (*Id.* (citing '469 patent at 22:58-66, Fig. 17A, and Table 6).) Amazon does not dispute this additional corresponding structure for performing the claimed function. Given the lack of dispute as to the corresponding structure for this function, the Court should adopt the construction proposed by both parties if it determines this limitation is governed by § 112, ¶ 6.

### 4. "program code, responsive to user input commands, for establishing a point-to-point communications with another process over the computer network" and related terms

The term "program code, responsive to user input commands, for establishing a point-to-point communications with another process over the computer network" and similar variations are recited in claim 1 of the '469 patent; claims 21 and 31 of the '704 patent; and claim 13 of the '121

patent.[8]  These limitations should be construed according to § 112, ¶ 6 because they recite a function without sufficient structure for performing that function.  (Johnson Decl. ¶¶ 38-39.)  Here, the function is: "[in response to user input commands] / user associating the element representing the first callee process with the element representing the first communication line / responsive to manipulation of the graphic elements on the graphic user interface / responsive to the network protocol address of the second process] establishing a point-to-point communication with [another/the second/first callee] process over the computer network."  (*Id.* ¶ 40.)  Straight Path argues that the function is "responsive to user input commands, establishing point-to-point communications between the first and second process over the computer network."  (Ex. M at 6.)  The proposed functions are nearly identical, and Amazon will agree to either construction.

The function recited in these claims does not itself disclose structure to one of ordinary skill in the art.  (Johnson Decl. ¶ 39.)  And, as explained above, the "program code for" term is a nonce phrase used in place of "means" that does not specify sufficient structure for performing the claimed function.  *Williamson*, 792 F.3d at 1348-49; *GEMSA*, 2016 WL 7416132, at *29-30; (Johnson Decl. ¶ 39.)  The specifications of the patents-in-suit provide the following corresponding structure for performing the claimed function:

> When either of processing units 12, 22, logs on to the Internet via a dial-up connection, the respective unit is provided a dynamically allocated IP address by an Internet service provider.

> Upon the first user initiating the point-to-point Internet protocol when the first user

---

[8] Variations: "program code, responsive to a user associating the element representing the first callee process with the element representing the first communication line, for establishing a point-to-point communication link from the caller process to the first callee process" ('704 patent, claim 21); "program code, responsive to manipulation of the graphic elements on the graphic user interface, for establishing the point-to-point communication link from the caller process to the first callee process" ('704 patent, claim 31); "program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network" ('121 patent, claim 13).

is logged on to the Internet 24, the first processing unit 12 automatically transmits its associated E-mail address and its dynamically allocated IP address to the connection server 26.

(Ex. C at 6:62-7:3, Ex. A at 5:21-28, Ex. B at 6:56-64; Johnson Decl. ¶ 40.) One of ordinary skill would therefore understand that the structure for performing the claimed function is the "first processing unit automatically transmitting its associated E-mail address and its dynamically allocated IP address to the connection server, the connection server performing the primary point-to-point Internet protocol (i.e. retrieving the IP address of the callee from the database) and sending the IP address to the first processing unit." (Johnson Decl. ¶ 40.) Straight Path does not specifically identify a corresponding structure. Instead, it cites several sections of the patents-in-suit without explaining what it considers to be the corresponding structure. (Ex. M at 6-7 (citing, *e.g.*, '704 patent at 5:55-67, 6:25-7:31, 8:18-22, Fig. 4, Fig. 8 at blocks 68-72, and 10:28-37).) The structure is properly construed as "first processing unit automatically transmitting its associated E-mail address and its dynamically allocated IP address to the connection server, the connection server performing the primary point-to-point Internet protocol (i.e. retrieving the IP address of the callee from the database) and sending the IP address to the first processing unit." (Johnson Decl. ¶ 40.)

5.    **"program code for transmitting, from the first process to the server process, a query as to whether the second process is connected to the computer network" and related terms**

The term "program code for transmitting, from the first process to the server process, a query as to whether the second process is connected to the computer network" and similar variations are recited in claim 3 of the '469 patent; claims 1 and 22 of the '704 patent; and claims 6, 8, and 14 of the '121 patent.[9] These claim limitations are governed by § 112, ¶ 6 because they

---

[9] Variations: "program code for transmitting, to the server, a query as to whether the second process is connected to the computer network" ('704 patent, claim 1); "program code[/logic]

recite a function without sufficient structure for performing that function. (Johnson Decl. ¶¶ 41-42.) Here, the functions are: "transmitting to the server process, a query as to whether the second process is connected to the computer network / querying the server as to the on-line status of the first callee process." (*Id.* ¶ 43.) Straight Path argues that, to the extent these claims are governed by § 112, ¶ 6, the function is "querying the server as to whether a second process is connected to the computer network." (Ex. M at 9-10.) Amazon is agreeable to either proposed construction.

The function recited in these claims does not in itself disclose structure to one of ordinary skill in the art. (Johnson Decl. ¶ 42.) And, as explained above, the "program code for" term is a nonce phrase used in place of "means" that does not specify sufficient structure for performing the claimed function. *Williamson*, 792 F.3d at 1348-49; *GEMSA*, 2016 WL 7416132, at *29-30; (Johnson Decl. ¶ 42.) The specifications of the patents-in-suit provide the following corresponding structure for performing the claimed function: "The first processing unit 12 then sends a query, including the E-mail address of the callee, to the connection server 26." (Ex. C at 7:30-31; Ex. A at 5:55-56; Ex. B at 7:25-26; Johnson Decl. ¶ 43.) Straight Path does not specifically identify a corresponding structure. Instead, it cites several sections of the patents-in-suit without explaining what it considers to be the corresponding structure. (Ex. M at 9-10 (citing *e.g.*, '469 patent at 23:63-66, 11:65-12:1, 12:18-23, and 18:38-42).) The structure is properly construed as "the first processing unit sends a query, including the Email address of the callee to the connection server." (Johnson Decl. ¶ 43.)

**6.    "program code for determining the currently assigned network protocol address of the first process upon connection to the network"**

configured to query the address server as to whether the second process is connected to the computer network" ('121 patent, claims 6, 8); "program logic configured to transmit, to the server, a query as to whether the second process is connected to the computer network" ('121 patent, claim 14); and "program code for querying the server as to the on-line status of the first callee process" ('704 patent, claim 22).

Claim 1 of the '469 patent requires "program code for determining the currently assigned network protocol address of the first process upon connection to the computer network." Ex. C at cl. 1. This limitation is governed by § 112, ¶ 6 because it recites a function without a sufficient structure for performing that function. *Lockheed*, 324 F.3d at 1318. Here, the function recited is "determining the currently assigned network protocol address of the first process upon connection to the computer network." (Ex. C at cl. 1; Johnson Decl. ¶ 44.) The recited function does not itself disclose structure to one of ordinary skill in the art. (Johnson Decl. ¶ 45.) And, as explained above, the "program code for" term does not specify sufficient structure for performing the claimed function. *Williamson*, 792 F.3d at 1348-49; *GEMSA*, 2016 WL 7416132, at *29-30; (Johnson Decl. ¶ 45.) As such, the specification must disclose an algorithm to meet the definiteness requirements of § 112, ¶ 2. *Augme*, 755 F.3d at 1337.

The specification fails to disclose any such structure or algorithm. (Johnson Decl. ¶¶ 45-46.) Straight Path points to two passages that purportedly provide corresponding structure. First, it cites a passage that states that a first processing unit transmits its "dynamically allocated IP address" to the connection server. (Ex. M at 4 (citing '469 patent at 6:61-7:3).) This just describes sending the IP address. It does not describe how the first processing unit determines its IP address in order to send it. (Ex. C at 6:61-7:3; Johnson Decl. ¶ 47.) The second passage describes the client sending its assigned IP address after the client has determined it, with no description of how it is actually determined. (Ex. C at 22:58-66 (and associated Fig. 17A and Table 6); at 22:58-66; Johnson Decl. ¶ 47.) Claim 1 is therefore indefinite. *Williamson,* 792 F.3d at 1352-54 (finding means-plus-function claims indefinite where "[t]he specification does not set forth an algorithm for performing the claimed functions"); *Media Rights Techs. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1374-75 (Fed. Cir. 2015) (same).

**7.** **"program code, responsive association [*sic*] of the element representing the first callee process with the element representing the communication line having a temporarily disabled status, for temporarily disabling the point-to-point communication link between the caller process and the first callee process"**

Claim 27 of the '704 patent requires "program code, responsive association [*sic*] of the element representing the first callee process with the element representing the communication line having a temporarily disabled status, for temporarily disabling the point-to-point communication link between the caller process and the first callee process." (Ex. A at cl. 27.) This claim limitation is governed by § 112, ¶ 6 because it recites a function without sufficient structure for performing that function. (Johnson Decl. ¶¶ 48-49.) Here, the function is: "responsive to the association of the element representing the first callee process with the element representing the communication line having a temporarily disabled status, temporarily disabling the point-to-point communication link between the caller process and the first callee process." (*Id.* ¶ 50.) This accounts for all of the functional claim language recited in the limitation. Straight Path argues that, to the extent this claim is governed by § 112, ¶ 6, the function is only a portion of the recited claim language: "temporarily disabling the point-to-point communication link between the caller process and the first callee process." (Ex. M at 10.) Straight Path's proposal improperly omits functional claim language: "responsive to the association of the element representing the first callee process with the element representing the communication line having a temporarily disabled status." (Johnson Decl. ¶ 50.) The Court should therefore adopt Amazon's proposed function. *Lockheed*, 324 F.3d at 1319 ("The function of a means plus function claim must be construed to include the limitations contained in the claim language.").

The function recited in this claim does not in itself disclose structure to one of ordinary skill in the art. (Johnson Decl. ¶ 49.) The '704 patent specification does not disclose the requisite structure (*i.e.*, algorithm) for performing the claimed function. (*Id.* ¶¶ 48, 51.) Straight Path relies

on the following disclosure from the '704 patent as providing the corresponding structure: "For example, the END and SND commands may be initiated as described above, and the HLD icon 44 may be actuated to place a current line on hold." (Ex. M at 10 (citing '704 patent at 8:57-58).) This does not disclose the corresponding structure because it does not disclose an algorithm for temporarily disabling the communication link *responsive to the association of the element representing the first callee process with the element representing the communication line having a temporarily disabled status*. *See Noah Sys., Inc.* 675 F.3d at 1318-19 ("[W]here a disclosed algorithm supports some, but not all, of the functions associated with a means-plus-function limitation, we treat the specification as if no algorithm has been disclosed at all."); *Media Rights*, 2015 WL 5166358, at *6-7; (Johnson Decl. ¶ 51.) This structure is not disclosed in the '704 patent. (Johnson Decl. ¶ 51.) Claim 27 is therefore indefinite.

## V.  CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court adopt its proposed constructions of the disputed claim terms.

Dated: October 23, 2017

Respectfully submitted,

**AMAZON.COM, INC.**

*/s/ Laura Anne Kuykendall*

Robert A. Angle (VSB No. 37691)
    robert.angle@troutmansanders.com
Laura Anne Kuykendall (VSB No. 82318)
    la.kuykendall@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone:  (804) 697-1468
Facsimile:  (804) 697-1339

*Of Counsel:*

J. David Hadden *
    dhadden@fenwick.com
Saina Shamilov *
    sshamilov@fenwick.com
Todd R. Gregorian *
    tgregorian@fenwick.com
Ravi R. Ranganath *
    rranganath@fenwick.com
Dargaye Churnet *
    dchurnet@fenwick.com
Shannon E. Turner *
     sturner@fenwick.com

FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  (650) 988-8500
Facsimile:  (650) 938-5200

*\* Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2017, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to all registered users, including the following:

Robert G. Kidwell.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
701 Pennsylvania Ave, NW, Suite 900
Washington, DC 20004
rgkidwell@mintz.com

*Counsel for Straight Path IP Group, Inc.*

*/s/ Laura Anne Kuykendall*
Laura Anne Kuykendall (VSB No. 82318)
la.kuykendall@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1468
Facsimile: (804) 697-1339

*Counsel for Amazon.com, Inc.*