**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

AMAZON.COM, INC.

               Plaintiff,

     v.

STRAIGHT PATH IP GROUP, INC.,

               Defendant.

Civil Action No. 1:15-cv-00682-AJT-TCB

**<u>STRAIGHT PATH IP GROUP, INC.'S OPENING MARKMAN BRIEF</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     THE INVENTIONS OF THE ASSERTED PATENTS ................................... 3

III.    RELEVANT LEGAL PRINCIPLES ............................................................... 5

        A.      Claims of a Patent Govern .................................................................. 5

        B.      Presumption of Plain and Ordinary Meaning ...................................... 6

        C.      Intrinsic Evidence Is the Best Evidence ............................................. 7

        D.      Deference Given to Claim Construction Rulings of other District Courts ............ 7

IV.     LEVEL OF ORDINARY SKILL IN THE ART ............................................. 8

V.      AGREED CONSTRUCTIONS ........................................................................ 8

VI.     PROPOSED CONSTRUCTIONS OF DISPUTED CLAIM TERMS ............. 9

VII.    STRAIGHT PATH'S PROPOSED CONSTRUCTIONS OF THE DISPUTED
        CLAIM TERMS ARE CORRECT .................................................................. 10

        A.      Point-to-Point means "communication between two processes over a
                computer network that are not intermediated by the [server process /
                server / address server]" .................................................................... 10

        B.      All Other Claim Terms Should Be Given Their Plain and Ordinary
                Meaning .............................................................................................. 13

VIII.   35 U.S.C. § 112, ¶ 6 DOES NOT APPLY TO ANY ELEMENTS OF THE
        ASSERTED CLAIMS. ................................................................................... 15

IX.     CONCLUSION ............................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Fiber Techs. Trust v. J&L Fiber Servs.*,
 674 F.3d 1365 (Fed. Cir. 2012)....................................................................... *passim*

*Creative Integrated Sys. v. Nintendo of Am., Inc.*,
 2013 U.S. App. LEXIS 11068 (Fed. Cir. 2013) ......................................................6

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
 438 F.3d 1374 (Fed. Cir. 2006)..............................................................................6

*DE Tech., Inc. v. ISHOPUSA, Inc.*,
 826 F. Supp. 2d 937 (W.D. Va. 2011) ...................................................................7

*Inline Plastics Corp. v. EasyPak, LLC*,
 799 F.3d 1364 (Fed. Cir. 2015).............................................................................6

*Innovative Commc'ns Techs. Inc. v. Vivox, Inc.*,
 No 2:12-CV-00007, 2012 U.S. Dist. LEXIS 154311 (E.D. Va. Oct 26, 2012)............... *passim*

*Markman v. Westview Instruments, Inc.*,
 517 U.S. 370 (1996).................................................................................5, 8

*Markman v. Westview Instruments, Inc.*,
 52 F.3d 967 (Fed. Cir. 1995) (en banc)..................................................................7

*Pall v. Micron Separations, Inc.*,
 66 F.3d 1211 (Fed. Cir. 1995)..............................................................................7

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (en banc)...................................................... *passim*

*Sipco, LLC v. Amazon.com, Inc.*,
 2012 U.S. Dist. LEXIS 150940 (E.D. Tex.Oct. 19, 2012) ......................................7

*Starhome GmbH v. AT&T Mobility LLC*,
 743 F.3d 849 (Fed. Cir. 2014)................................................................6, 13, 21

*Superguide Corp. v. DirecTV Enters.*,
 358 F.3d 870 (Fed. Cir. 2004)..............................................................................3

*TQP Dev., LLC v. Intuit Inc.*,
 2014 U.S. Dist. LEXIS 84057 (E.D. Tex. June 20, 2014).......................................8

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F. 3d 1576 (Fed. Cir. 1996)................................................................................................7

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) (en banc)..............................................................................21

*Zodiac Pool Care, Inc. v. Hoffinger Industries, Inc.*,
  206 F.3d 1408 (Fed. Cir. 2000)...............................................................................................7

**Statutes**

35 U.S.C. § 112, ¶ 6............................................................................................... *passim*

Pursuant to the Revised Joint Proposed Discovery Plan [Dkt No. 97] approved by the Court on September 18, 2017, Straight Path IP Group, Inc. ("Straight Path") submits this opening Markman Brief regarding the proper construction of disputed terms of U.S. Patent Nos. 6,009,469 ("the '469 patent"), 6,108,704 ("the '704 patent"), and 6,131,121 ("the '121 patent") (collectively, the "Asserted Patents") in the following asserted claims: X, Y, Z (collectively, the "Asserted Claims").

## I.    INTRODUCTION

The three Asserted Patents generally describe methods and systems for (1) determining whether a process is running and connected to a network; (2) determining that process's location on the network; and (3) establishing a point-to-point communication with that process.  Straight Path identified six claim terms that require construction. Of these only the term "point-to-point" remains in dispute—the parties have come to agreement as to the meaning of five of these six terms.

The term "point-to-point" has already been construed by this District.  Judge Doumar construed the term to mean "communications between two processes over a computer network that are not intermediated by a connection server." *Innovative Commc'ns Techs. Inc. v. Vivox, Inc.*, No 2:12-CV-00007, 2012 U.S. Dist. LEXIS 154311 at *18-29 (E.D. Va. Oct 26, 2012). In doing so, he expressly stated that "point-to-point" included communications intermediated by gateway servers or similar devices.  "By adding '[not intermediated by a] gateway or similar device,' Defendant's proposed construction would broaden the scope of intermediary devices that may not come between the caller and callee processes, thus narrowing the scope of the 'point to point' claim language." *Id*. at 15.

The claims are clear that point-to-point communications are communications that are not intermediated by the connection server described by the claims.  Straight Path therefore seeks to

adopt Judge Doumar's previous construction, with a slight clarification to ensure that devices, such as gateway servers, can indeed intermediate a point-to-point communication.  Specifically, Straight Path proposes that "point-to-point" be construed to mean "communication between two processes over a computer network that are not intermediated by the [server process / server / address server]."  This modification provides clarity in line with the Court's previous construction order, which noted that portions of the prosecution history of each of the Asserted Patents "clearly describe a method or system in which two processes communicate over a computer network without any intermediation by the connection server." *Id.* at *24 (emphasis added).  The file histories of the Asserted Patents similarly support the construction of this term as a "communication between two processes over a computer network that are not intermediated by the [claimed server]. *See, e.g.,* Amendment to Application No. 08/533,115 (later issued as U.S. Patent No. 6,108,704) (Sept 25, 1995) attached as Exhibit 4 to the Newman Declaration. ("the second process establishes communications with the first process directly, without any intervenion [sic] from the address/ information server." and "the first process establishes communications with the second process directly, without any intervention [sic] from the address/ information server.")

The remainder of the disputed claims and claim terms of the Patents are predominately simple, well-known words and phrases that are readily and easily understood by a lay person – such as "network protocol address," "unique identifier," and "address server."  As Judge Doumar of this District previously observed, the correct meaning of such claim elements in these Asserted Patents "is readily apparent even to a layperson."   *See Innovative Commc'ns Techs. Inc. v. Vivox, Inc.*, No 2:12-CV-00007, 2012 U.S. Dist. LEXIS 154311 at *30-31, *31-32 (E.D. Va. Oct 26, 2012).

Amazon, however, has proposed unnatural and unnecessary constructions for these claim elements.  Its positions disregard the Federal Circuit's admonition that a court should construe a claim term to mean something other than its ordinary meaning only in the face of a "clear and unambiguous" disclaimer.  *Advanced Fiber Techs. Trust v. J&L Fiber Servs.*, 674 F.3d 1365, 1372-73 (Fed. Cir. 2012).  Despite the "'heavy presumption' that the terms used in claims mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art," Amazon's proposed constructions routinely contradict, narrow, or just ignore the ordinary and customary meaning of the disputed claim elements.  *See Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 875 (Fed. Cir. 2004)(quoting *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002)).  Amazon would have the Court improperly import extraneous limitations into the terms' correct ordinary meanings.  Yet, Amazon has not met and cannot meet its burden of establishing that the patentees clearly and explicitly redefined or disavowed the full scope of those ordinary meanings.  The Court, therefore, should reject Amazon's proposed constructions, and it should instead construe the terms as having their ordinary and customary meaning.

## II.     THE INVENTIONS OF THE ASSERTED PATENTS

Each of the Asserted Patents has a September 25, 1995 filing date and describes the increased popularity of online applications, such as "applications to provide multimedia, including video and voice clips, to online users." '704 Patent at 1:9-13.  To effectively connect to and utilize such a computer program, however, users needed a way to determine (1) if the desired process was in fact online;  and (2) if, so how to communicate with that process over the Internet.  *See* '469 Patent at 2:57, 6:66-7:13, 7:30-59; '704 Patent at 1:63-2:10; 5:15-6:16; 10:4-37.

Thus, if a first process queries a connection server to determine a second process's location on the Internet, that first process can then send a communication over the Internet to that second process without involving the connection server, which is known as a "point-to-point communication." '704 Patent at 1:48-53, 5:1-14, 5:60-67, 7:32-41.  Such communication is "point-to-point" because the two processes can communicate without intermediated involvement of the connection server.  '704 patent at 1:48-53, 5:1-14, 5:60-67, 7:32-41.  This is true whether the message from the first process passes through a number of other computers or servers as it passes to the second.  '704 Patent at 5:55-67 (emphasis added).  Indeed, because the Internet is a number of interconnected servers, any message communicated over the Internet must travel through a number of intermediary servers, and the Asserted Patents make clear any such Internet communication sent using the recipient's ("callee's") address is a point-to-point communication: "The IP address of the callee is retrieved from the database and sent to the first processing unit. The first processing unit may then directly establish the point-to-point Internet communications with the callee using the IP address of the callee." '704 patent at 5:55-67 (emphasis added).

The patents acknowledge that the prior art could successfully use an IP address to create point-to-point communications between on-line processes (e.g., to allow video teleconferencing) where those processes had permanent IP addresses:  "Permanent IP addresses of users and devices accessing the Internet readily support point-to-point communications of voice and video signals over the Internet.  For example, realtime video teleconferencing has been implemented using dedicated IP addresses and mechanisms known as reflectors." '704 patent at 1:48-52.

As the patents describe, however, some users do not have a permanent and stable presence on the Internet. Instead, such users repeatedly log on and off of the Internet and may receive a new IP address each time they connect to the Internet.  *See* '704 Patent at 1:35-47,

5:1429, 6:6-16.  These "dynamic" addresses, combined with the potential for a given process to be on-line or off-line at the time a communication is sent, create a difficulty in establishing point-to-point communications between two processes, namely how do you communicate with a process that may have a new, unknown IP address every time that process goes online? "Due to the dynamic nature of temporary IP addresses of some devices accessing the Internet, point-to-point communications in realtime of voice and video have been generally difficult to attain." '704 Patent at 1:53-56.

The Asserted Patents solve this problem by describing and claiming apparatus and methods for, among other things: (1) using a server to determine whether a computer process is running and connected to a network; (2) using that server to determine that process's location on the network; and (3) establishing a point-to-point communication with that process, without connecting through the initial server.  *See, e.g.*, '704 Patent at 1:63-2:10; 5:15-6:16; 10:4-37; Claims 1, 11, and 22.

## III.     RELEVANT LEGAL PRINCIPLES

### A.     Claims of a Patent Govern

"The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, Ltd., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (internal quotation omitted). Claim construction "is a question of law, to be determined by the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).  A bedrock principle of claim construction is that the claims of a patent define the scope of the right to exclude, and the claims themselves are a primary source for construction of a term. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  *Id*. at 1316 (citation

omitted). When analyzing the claims of a patent to determine the proper construction of claim terms, it is improper to construe the claims in such a way as to render any of the claim language superfluous. *Creative Integrated Sys. v. Nintendo of Am., Inc.*, 2013 U.S. App. LEXIS 11068, *18-*19 (Fed. Cir. 2013); *see also Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous[.]").

### B.    Presumption of Plain and Ordinary Meaning

Claims terms should ordinarily be given their plain and ordinary meaning unless that meaning has otherwise been disclaimed. *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 857 (Fed. Cir. 2014); *Phillips*, 415 F.3d at 1312-13. Only in the face of a "clear and unambiguous" disclaimer should a court construe a claim term to mean something other than its ordinary meaning. *Advanced Fiber Techs. Trust v. J&L Fiber Servs.*, 674 F.3d 1365, 1372-73 (Fed. Cir. 2012). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. Generally, embodiments and examples disclosed in the specification should not be read as limitations on the claims of a patent. *Phillips*, 415 F.3d at 1323. As the Federal Circuit has explained, "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Inline Plastics Corp. v. EasyPak, LLC*, 799 F.3d 1364, 1368-69 (Fed. Cir. 2015); *Liebel-Flarsheim Co.*, 358 F.3d at 906 ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.") (internal quotation marks and citation omitted).

## C.    Intrinsic Evidence Is the Best Evidence

The patent specification "is always highly relevant to the claim construction analysis.

Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*,

415 F.3d at 1315 (internal quotations omitted).  Other intrinsic evidence should be considered as

well, and includes "the patent and prosecution history – the undisputed public record." *Markman*

*v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370

(1996) (internal quotation omitted). Only where the intrinsic record fails to shed light on the

meaning of the claim terms may Courts then refer to extrinsic evidence such as expert testimony,

dictionaries, and treatises. *Zodiac Pool Care, Inc. v. Hoffinger Industries, Inc.*, 206 F.3d 1408,

1414 (Fed. Cir. 2000); *Pall v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995).

Extrinsic evidence at odds with the intrinsic record should be given little to no weight. *Phillips*,

415 F.3d at 1317; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F. 3d 1576, 1582 (Fed. Cir. 1996)

(The intrinsic evidence "is the most significant source of the legally operative meaning of

disputed claim language.").

## D.    Deference Given to Claim Construction Rulings of other District Courts

District Courts often give deference to the claim construction rulings of other District

Courts.  *See, e.g.*, *DE Tech., Inc. v. ISHOPUSA, Inc.*, 826 F. Supp. 2d 937, 941 (W.D. Va. 2011)

("Absent a showing…that the court's original construction of a disputed term was incorrect as a

matter of law, the court will apply its prior *Markman* rulings in the instant action.").  "Previous

claim constructions in cases involving the same patent are entitled to substantial weight, and the

Court has determined that it will not depart from those constructions absent a strong reason for

doing so.  *TQP Dev., LLC v. Intuit Inc.*, 2014 U.S. Dist. LEXIS 84057, at *22 (E.D. Tex. June

20, 2014);  *see also Sipco, LLC v. Amazon.com, Inc.*, 2012 U.S. Dist. LEXIS 150940, at *21-22

(E.D. Tex.Oct. 19, 2012) ("[P]rior claim construction proceedings involving the same patents-in-

suit are 'entitled to reasoned deference under the broad principals of stare decisis and the goals articulated by the Supreme Court in *Markman*, even though stare decisis may not be applicable per se.'" (quoting *Maurice Mitchell Innovations, LP v. Intel Corp.*, 2006 U.S. Dist. LEXIS 41453, at *4 (E.D. Tex. June 21, 2006)).

## IV.   LEVEL OF ORDINARY SKILL IN THE ART

A person of ordinary skill in the art for the Asserted Patents at the relevant time frame (early 1990s) would typically have the knowledge acquired by a person having a Bachelor's degree in computer science, computer engineer, or a related field.  Stubblebine Decl. at ¶ 20.  A person of ordinary skill in the art could also have obtained the requisite knowledge through 1-2 years of professional experience as a software developer designing and constructing distributed applications or systems.  *Id.*

## V.   AGREED CONSTRUCTIONS

The parties have agreed to constructions for the following claim terms:

| TABLE 1 – AGREED CONSTRUCTIONS | | | | |
|---|---|---|---|---|
| TERM | '469 CLAIMS | '704 CLAIMS | '121 CLAIMS | AGREED CONSTRUCTION |
| "connected to the computer network"  "is connected to the computer network"  "on-line status of the first callee process"  "on-line status of the first called process" | | | | "[is] connected to the computer network at the time that the query is transmitted to the server." |
| "accessible" | | | | "is connected to the computer network at the time that the query is transmitted to the server and not otherwise unavailable for connection" |

| | | | | "a running instance of a computer program[1] or application" |
|---|---|---|---|---|
| "process" | | | | |
| "dynamically assigned" | | | | "assigned to a host for a limited period of time (or until explicitly relinquished by the host)" |

## VI.    PROPOSED CONSTRUCTIONS OF DISPUTED CLAIM TERMS

Table 2, below, summarizes Straight Path's remaining proposed construction, after the

parties agreements above, and to which claims of the Asserted Patents the proposed construction

applies.  Amazon has not proposed a construction for "point-to-point."

| TABLE 2 – STRAIGHT PATH'S PROPOSED CONSTRUCTIONS | | | | | |
|---|---|---|---|---|---|
| # | TERM | '469 CLAIMS | '704 CLAIMS | '121 CLAIMS | STRAIGHT PATH'S PROPOSED CONSTRUCTION | AMAZON'S PROPOSED CONSTRUCTION |
| 1 | "point-to-point" | 1, 2, 3, 5, 9, 14 | 1, 11, 16, 22, 31 | 6, 8, 10, 11, 13, 14 | "communication between two processes over a computer network that are not intermediated by the [server process / server/ address server / directory database]" | No construction proposed |

Table 3, below, summarizes Amazon's proposed constructions.[2]  Straight Path maintains

that these terms should be given their plain and ordinary meanings, except to the extent either an

agreed upon construction (listed in Table 1) or the term "point-to-point" is contained within a

longer claim phrase.

| TABLE 3 – AMAZON.COM'S PROPOSED CONSTRUCTIONS | | | | | |
|---|---|---|---|---|---|
| # | TERM | '469 CLAIMS | '704 CLAIMS | '121 CLAIMS | AMAZON'S PROPOSED CONSTRUCTION |
| 1 | "point-to-point communication" | 1, 2, 3, 5, 9, 14 | 1, 11, 16, 22, | 6, 8, 10, 11, 13, | "communication between two processes, established by one of the processes using the |

---

[1] The parties have further agreed that, in the context of the agreed-to construction for "process," a computer program encompasses both operating systems and the applications that run on them.

[2] Amazon.com's contentions regarding indefiniteness and § 112, ¶ 6 are addressed separately, below.

| | | | 27 | 14 | IP or network protocol address of the other process, that is not intermediated by a connection server" |
|---|---|---|---|---|---|
| 2 | "network protocol address" | 1, 2, 3, 5, 6, 9 | 1, 11, 22 | 6, 8, 11, 13, 14 | "the information necessary to direct data to a particular device or process on a computer network, which acts as a pointer to the device or process associated with that address" |
| 3 | "a unique identifier of the first process" | 1 | | | "an identifier that servers to distinguish the first process from all other processes registered with the server" |
| 4 | "address server" | | | 6, 8, 10, 13 | "a server that stores and provides the network protocol address of a process that is connected to the computer network at the time that the query is transmitted to the server" |

## VII.   STRAIGHT PATH'S PROPOSED CONSTRUCTIONS OF THE DISPUTED CLAIM TERMS ARE CORRECT

### A.   Point-to-Point means "communication between two processes over a computer network that are not intermediated by the [server process / server / address server]"

For the Asserted Patents, the patentee acted as his own lexicographer in only a few, limited cases.  For most of those cases, the parties have agreed to constructions as outlined above in Table 1.  For the term "point-to-point," Straight Path has proposed a construction of the term, while Amazon has elected to propose a construction not for the term itself, but for a longer phrase that includes the term" "point-to-point communication."

| Claim Term | Straight Path's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| "point-to-point communication" | Plain and Ordinary Meaning | "communication between two processes, established by one of the processes using the IP or network protocol address of the other process, that is not intermediated by a connection server" |

This Court should adopt Straight Path's proposed construction of "point-to-point," as it is consistent with this Court's previous construction of the same term for the same patents, and it is consistent with the plain meaning of the claim language.

The term "point-to-point" has already been construed by this District. Judge Doumar construed the term to mean "communications between two processes over a computer network that are not intermediated by a connection server." *Innovative Commc'ns Techs. Inc. v. Vivox, Inc.*, No 2:12-CV-00007, 2012 U.S. Dist. LEXIS 154311 at *18-29 (E.D. Va. Oct 26, 2012). That claim construction order was clear that "point-to-point" communications include communications intermediated by gateway servers or similar devices. *Id*. at 15.

The claims themselves are clear that "point-to-point" communications are not intermediated by the particular server described by a given claim. Stubblebine Decl. at ¶¶ 21-23. Straight Path therefore seeks to adopt Judge Doumar's previous construction, with a slight clarification to ensure that devices, such as gateway servers, can indeed intermediate a "point-to-point" communication. Specifically, Straight Path proposes that "point-to-point" be construed to mean "communication between two processes over a computer network that are not intermediated by the [server process / server / address server]." This modification provides clarity in line with the Court's previous construction order, which noted that portions of the prosecution history of each of the Asserted Patents "clearly describe a method or system in which two processes communicate over a computer network without any intermediation by the connection server." *Id.* at *24 (emphasis added).

The addition of a reference to the particular connection server identified in each claim is consistent with the claim language itself. Stubblebine Decl. at ¶¶ 21-23. The use of the word "the" instead of "a" incorporates this Court's earlier finding that "the preferred embodiment described in the patent specifications clearly involves the use of intermediary devices through which each of the communicating processes connects to the Internet" and that only intermediation by the claimed connection or address server should be excluded from the meaning

11

of the term. *See Innovative Commc'ns Techs. Inc.*, 2012 U.S. Dist. LEXIS 154311 at *28; Stubblebine Decl. at ¶¶ 21-23.

Straight Path's proposed construction is consistent with the language of the claims themselves and this Court's previous construction of this term for the Asserted Patents. This Court, in its previous claim construction ruling, recognized that "point-to-point" communication involved no intermediation by **the** server referenced in the claims. *See, e.g.*, *Innovative Commc'ns Techs.*, 2012 U.S. Dist. LEXIS 154311 at *24 ("The descriptions quoted above clearly describe a method or system in which two processes communicate over a computer network without any intermediation by **the** connection server. Although **the** connection server….") (emphasis added); *id.* at *24-25 ("Based on the claims, the specification, and the prosecution history in evidence, **the** connection server in the patents invention simply does not intermediate or come between, the two processes in their communications over a computer network.") (emphasis added).

The Court's understanding is consistent with the claims of the Asserted Patents. For example, the asserted claims do not require that the processes have **no** intermediary devices (in fact, this Court previous found that was specifically not the case, as a preferred embodiment of the patents contains intermediary devices, *see Innovative Commc'ns Techs.*, 2012 U.S. Dist. LEXIS 154311 at *28-29). Stubblebine Decl. at ¶¶ 21-23. Rather, the claims consistently reference a **particular** server that is differentiated from the two processes between which point-to-point communication is established. *See, e.g.*, '704 Patent, Claim 1; '469 Patent, Claim 1; '121 Patent, Claim 1; Stubblebine Decl. at ¶¶ 21-23. Therefore, the patentee did not intend to exclude all servers or server processes from the point-to-point connection and/or communication,

but solely **the** server or server process referenced in the claim language itself.  Stubblebine Decl.
at ¶¶ 21-23

Amazon has not proposed a construction for the term "point-to-point" but has, instead,
proposed a construction for the longer claim phrase "point-to-point communication" which
contain the term "point-to-point."  This claim phrase contains only a single, ordinary, non-
technical term in addition to the term "point-to-point": "communication."  Stubblebine Decl. at
¶¶ 21-23. Therefore, Straight Path maintains that this longer claim phrase does not need to be
construed, except to the extent the claim term "point-to-point" requires construction.  This Court
has previously determined that, "having already construed the term 'point-to-point,'… the
ordinary and customary meaning" of the longer claim phrases, "as understood by a person of
skill in the art when read in the context of the entire patent, is readily apparent, even to a
layperson." *Innovative Commc'ns Techs.*, 2012 U.S. Dist. LEXIS 154311 at *30-31.  Therefore,
this term should be given its plain and ordinary meaning as understood in the context of the
construction of "point-to-point" in this case.

### B.      All Other Claim Terms Should Be Given Their Plain and Ordinary Meaning

Apart from the limited circumstances where the patentee acted has his own
lexicographer, all other claim terms of the Asserted Patents should be given their plain and
ordinary meaning.  *See Starhome GmbH*, 743 F.3d at 857; *Phillips*, 415 F.3d at 1312-13, 1323.
Terms that are not clearly and unambiguously defined by the patentee should be given their plain
and ordinary meaning.  *See Advanced Fiber Techs. Trust*, 674 F.3d at 1372-73.  Nothing in the
claims, specifications, or file histories of the Asserted Patents clearly and unambiguously defines
the remaining claim terms Amazon has proposed for construction, and therefore there is no
justification for deviating from the plain and ordinary meaning of these term.  Stubblebine Decl.

at ¶ 23-27.  The Court should decline to construe the remaining terms proposed by Amazon, and instead give them their plain and ordinary meaning.

        1.        "network protocol address"

| Claim Term | Straight Path's Proposed Construction | Amazon's Proposed Construction |
| --- | --- | --- |
| "network protocol address" | Plain and Ordinary Meaning | "the information necessary to direct data to a particular device or process on a computer network, which acts as a pointer to the device or process associated with that address" |

The term "network protocol address" does not require construction and should be given its plain and ordinary meaning.  As this Court previously found, "the ordinary and customary meaning of the claim term 'network protocol address,' as understood by a person of skill in the art when read in the context of the entire patent, is readily apparent even to a lay person." *See, e.g.*, *Innovative Commc'ns Techs.*, 2012 U.S. Dist. LEXIS 154311 at *31-32.  Amazon's proposed construction improperly deviates from the plain and ordinary meaning of term by adding the limitation that the address must be assigned according to a "network-layer" protocol.  Stubblebine Decl. at ¶ 24.  Amazon's proposed construction of this term is thus both unnecessary and unsupported.  *Id*.  Absent a clear and unambiguous disavowal of claim scope, the plain and ordinary meaning of "network protocol address" should apply.  *Advanced Fiber Techs. Trust*, 674 F.3d at 1372-73.

        2.        "a unique identifier of the first process"

| Claim Term | Straight Path's Proposed Construction | Amazon's Proposed Construction |
| --- | --- | --- |
| "a unique identifier of the first process" | Plain and Ordinary Meaning | "an identifier that serves to distinguish the first process from all other processes registered with the server" |

The term "a unique identifier of the first process" does not require a construction and should be given its plain and ordinary meaning.  Stubblebine Decl. at ¶¶ 25-26.  Nothing in the claims, specifications, or file histories of the Asserted Patents justifies deviating from the plain and ordinary meaning of "a unique identifier of the first process." *Id.*  Therefore, these terms should not be construed to mean anything other than their ordinary meanings.  *Advanced Fiber Techs. Trust*, 674 F.3d at 1372-73.  Thus, the Court should decline to construe "a unique identifier of the first process," and instead give the term its plain and ordinary meaning.

3.      "address server"

| Claim Term | Straight Path's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| "address server" | "assigned for a limited period of time, or until explicitly relinquished" | "assigned to a host for a limited period of time (or until explicitly relinquished by the host)." |

The term "address server" does not require a construction and should be given its plain and ordinary meaning.  Stubblebine Decl. at ¶¶ 27-28.  Nothing in the claims, specifications, or file histories of the Asserted Patents justifies deviating from the plain and ordinary meaning of "address server."  *Id.*  Therefore, this terms should not be construed to mean anything other than its ordinary meaning.  *Advanced Fiber Techs. Trust*, 674 F.3d at 1372-73.  Thus, the Court should decline to construe "address server" as Amazon proposes, and instead give the term its plain and ordinary meaning.

**VIII.   35 U.S.C. § 112, ¶ 6 DOES NOT APPLY TO ANY ELEMENTS OF THE ASSERTED CLAIMS.**

Amazon.com has made the following contentions regarding indefiniteness and application of § 112, ¶ 6 to the indicated claim elements of the Asserted Patents:

| TABLE 4 – AMAZON.COM'S INVALIDITY AND §112, ¶6 CONTENTIONS | | | | | |
|---|---|---|---|---|---|
| # | TERM | '469 CLAIMS | '704 CLAIMS | '121 CLAIMS | AMAZON'S PROPOSED CONSTRUCTION |

| 1 | "program code for generating a user-interface enabling control of a first process"<br><br>"program code for generating an element representing a first communication line"<br><br>"program code for generating an element representing a second communication line"<br><br>"program code for generating an element representing a communication line having a temporarily disabled status" | 1 | | 21, 23, 27 | Governed by 35. U.S.C. §112, ¶6.<br><br>**Function:** generating a user-interface enabling control of a first process / generating an element representing a [first/second] communication line [having a temporarily disabled status].<br><br>**Structure:** the graphical user interface of the WebPhone system, as illustrated at '469 patent at Figures 13A, 14, 18A-D, 15:17-49, 26:39-30:19, and 30:20-31:15. |
| 2 | "program code for determining the currently assigned network protocol address of the first process upon connection to the computer network" | 1 | | | Indefinite<br><br>Governed by 35. U.S.C. §112, ¶6.<br><br>**Function:** determining the currently assigned network protocol address of the first process upon connection to the computer network.<br><br>**Structure:** no corresponding structure (algorithm) disclosed. |
| 3 | "program code responsive to the currently assigned network protocol address of the first process, for establishing a communication connection with the server process and for forwarding the assigned network protocol address of the first process and a unique identifier of the first process to the server | 1 | 1 | 6, 13, 14, 18 | Indefinite<br><br>Governed by 35. U.S.C. §112, ¶6.<br><br>**Functions:** in response to the currently assigned network protocol address of the first process, establishing a communication connection with the server process and forwarding the assigned network protocol address of the first process and a unique identifier of the first process to the server process upon establishing a communication connection with the server process / |

| | | | |
|---|---|---|---|
| process upon establishing a communication connection with the server process"

"program code configured to establish a communication connection with the directory server process once the assigned network protocol of the first process is known"

"program code for transmitting to the server a network protocol address received by the first process following connection the computer network"

"program code configured to, following connection of the first process to the computer network, forward to the server process a network protocol address at which the first process is connected to the computer network"

"program logic configured to, following connection of the first process to the computer network, forward the address server a network protocol address at which the first process is connected to the computer network"

"program logic configured to transmit to | | | | establishing a communication connection with the directory server process once the assigned network protocol of the first process is known / transmitting to the server a network protocol address received by the first process following connection to the computer network / forwarding to the [address] [server process/network] a network protocol address at which the first process is connected to the computer network.

**Structure:** The first processing unit automatically transmitted its associated E-mail address and its dynamically allocated IP address to the connection server, as specified at '469 patent at 6:62-7:3. |

| | | | | |
|---|---|---|---|---|
| | the server a network protocol address received by the first process following connection to the computer network"<br><br>"program logic responsive to one of the network protocol addresses and configured to establish a point-to-point communication link from the first process to the second process over the computer network" | | | | |
| 4 | "program code, responsive to user input commands, for establishing a point-to-point communications with another process over the computer network"<br><br>"program code, responsive to a user associating the first element representing the first callee process with the element representing the first communication line, for establishing a point-to-point communication link from the caller process o the first callee process ('704 Claim 21)<br><br>"program code, responsive to manipulation of the graphic elements on the graphic user interface, for establishing the point-to-point communication link from the caller process to the first callee process" | 1 | 21, 31 | 13 | <u>Governed by 35. U.S.C. §112, ¶6.</u><br><br>**Function:** [in response to user input commands / user associating the element representing the first callee process with the element representing the first communication line / responsive to manipulation of the graphic elements on the graphic user interface / responsive to the network protocol address of the second process/ establishing a point-to-point communication with [another/the second/first callee] process over the computer network.<br><br>**Structure:** The first processing unit automatically transmitting its associated E-mail address and its dynamically allocated IP address to the connection server, the connection server preforming the primarily point-to-point Internet protocol (i.e. retrieving the IP address of the callee from the database) and sending the IP address to the first processing unit, as specified at '469 patent at 6:62-7:3 and Figure 8. |

| | ('704 Claim 31) | | | | |
|---|---|---|---|---|---|
| 5 | "program code, responsive to the network protocol address of a second process, for establishing a point-to-point communication link between the first process and the second process over the computer network"<br><br>"program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network"<br><br>"program code configured to respond to the network protocol address of the second process, establish a point-to-point communication link with the second process over the computer network"<br><br>"program logic configured to, in response to the network protocol address of the second process, establish a point-to-point communication link with the second process over the computer network"<br><br>"program logic, responsive to the network protocol address of the | 2 | 1 | 6, 8, 13, 14 | <u>Governed by 35. U.S.C. §112, ¶6.</u><br><br>**Function:** in response to the network protocol address of a second process, establishing a point-to-point communication link between the first process and the second process over the computer network.<br><br>**Structure:** the first processing unit opens a socket and transmits a <Call> command, as specified at '704 patent at 5:1-13. |

| | | | | | |
|---|---|---|---|---|---|
| | second process, and configured to establish a point-to-point communication link between the first process and the second process over the computer network"<br><br>"program code, responsive to the network protocol address of the second process, for establishing a point- to-point communication link between the first process and the second process over the computer network" | | | | |
| 6 | "program code for transmitting, from the first process to the server process, a query as to whether the second process is connected to the computer network"<br><br>"program code for transmitting, to the server, a query as to whether the second process is connected to the computer network"<br><br>"program code configured to query the address server as to whether the second process is connected to the computer network"<br><br>"program logic configured to query the address server as to whether the second process is connected to | 3 | 1, 22 | 6, 8, 14 | Governed by 35. U.S.C. §112, ¶6.<br><br>**Function:** transmitting to the server process, a query as to whether the second process is connected to the computer network / querying the server as to the on-line status of the first callee process<br><br>**Structure:** the first processing unit sends a query, including the Email address of the callee to the connection server, as specified at '469 patent at 7:30-31. |

| | | | | | |
|---|---|---|---|---|---|
| | the computer network"<br><br>"program logic configured to transmit, to the server, a query as to whether the second process is connected to the computer network"<br><br>"program code for querying the server as to the on-line status of the first callee process" | | | | |
| 7 | "program code, responsive to association of the element representing the first callee process with the element representing the communication line having a temporarily disabled status, for temporarily disabling the point-to-point communication link between the caller process and the first callee process" ('704 Claim 27) | | | | <u>Indefinite</u><br><br><u>Governed by 35. U.S.C. §112, ¶6.</u><br><br>**Function:** in responsive (sic) to the association of the element representing the first callee process with the element representing the communication line having a temporarily disabled status, temporarily disabling the point-to-point communication link between the caller process and the first callee process.<br><br>**Structure:** no corresponding structure (algorithm) disclosed |

The claim terms identified by Amazon as indefinite and/or governed by 35 U.S.C. § 112, ¶ 6 are definite and do not invoke means-plus-function analysis. Stubblebine Decl. at ¶¶ 29-33. When a claim term does not use the word "means," this creates a rebuttable presumption that § 112, ¶ 6 does not apply. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc). Amazon has not overcome this presumption to show that § 112, ¶ 6 should apply in this instance. Stubblebine Decl. at ¶¶ 29-33. Rather, these terms should be given their plain and ordinary meaning, pursuant to the presumption that, unless otherwise defined or disclaimed within the patent, the plain and ordinary meaning of a term should be applied. *See Starhome*,

743 F.3d at 857; *Phillips*, 415 F.3d at 1312-13; *Advanced Fiber Techs.*, 674 F.3d at 1372-73;

Stubblebine Decl. at ¶¶ 29-33.

If the Court does find these terms to be governed by 35 U.S.C. § 112, ¶ 6, Straight Path

proposes the following corresponding structures and functions:

| Claim Language | Straight Path's Proposal |
|---|---|
| "program code for generating a user-interface enabling control of a first process"<br><br>"program code for generating an element representing a first communication line"<br><br>"program code for generating an element representing a second communication line"<br><br>"program code for generating an element representing a communication line having a temporarily disabled status" | Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, if these phrases are governed by 35 U.S.C. §112(6):<br><br>Functions:<br>1. generating a user interface enabling control of a first process;<br><br>2. generating a user interface element representing a first communication line<br><br>3. generating a user interface element representing a second communication line<br><br>4. generating a user interface element representing a communication line having a temporarily disabled status<br><br>Corresponding Structures:<br>• '704 patent at 8:41-43, Fig. 5 element 38;<br>• '469 patent at 11:19-26;<br>• '469 patent at 26:43-45;<br>• '469 patent at Figs 18B, 30:22-33;<br>• '469 patent at Figs. 5 and 6, 10:34-11:63;<br>• '469 patent at Fig. 14, 17:22-26;<br>• '469 patent at Fig. 14, 26:43-29:51; and<br>• equivalents thereof. |
| "program code for determining the currently assigned network protocol address of the first process upon connection to the computer network" | Not indefinite.  Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, if these phrases are governed |

| | |
|---|---|
| | by 35 U.S.C. §112(6): |
| | Function: Determining the currently assigned network protocol address of the first process upon connection to the computer network. |
| | Corresponding Structures:<br>• '469 patent at 6:61-7:3;<br>• '469 patent at 22:58-66, Fig. 17A (as to \<ONLINE REQ\> packet), Table 6 (as to WPP_ONLINEREQ); and<br>• equivalents thereof. |
| "program code responsive to the currently assigned network protocol address of the first process, for establishing a communication connection with the server process and for forwarding the assigned network protocol address of the first process and a unique identifier of the first process to the server process upon establishing a communication connection with the server process"<br><br>"program code configured to establish a communication connection with the directory server process once the assigned network protocol of the first process is known"<br><br>"program code for transmitting to the server a network protocol address received by the first process following connection the computer network"<br><br>"program code configured to, following connection of the first process to the computer network, forward to the server process a network protocol address at which the first process is connected to the  computer network"<br><br>"program logic configured to, following connection of the first process to the computer network, forward the address server a network protocol address at which the first process is connected to the computer network"<br><br>"program logic configured to transmit to the | Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, if these phrases are governed by 35 U.S.C. §112(6):<br><br>Functions:<br>1. Forwarding a dynamically assigned network protocol address to a server process<br><br>2. Forwarding a dynamically assigned network protocol address and unique identifier to a server process<br><br>Corresponding Structures:<br>• '469 patent at 6:66-7:3;<br>• '469 patent at 22:58-66, Fig. 17A (as to \<ONLINE REQ\> packet), Table 6 (as to WPP_ONLINEREQ);<br>• '704 patent at 5:20-28; and<br>• equivalents thereof. |

23

| | |
|---|---|
| server a network protocol address received by the first process following connection to the computer network"<br><br>"program logic responsive to one of the network protocol addresses and configured to establish a point-to-point communication link from the first process to the second process over the computer network" | |
| "program code, responsive to user input commands, for establishing a point-to-point communications with another process over the computer network"<br><br>"program code, responsive to a user associating the first element representing the first callee process with the element representing the first communication line, for establishing a point-to-point communication link from the caller process o the first callee process ('704 Claim 21)<br><br>"program code, responsive to manipulation of the graphic elements on the graphic user interface, for establishing the point-to-point communication link from the caller process to the first callee process" ('704 Claim 31) | Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, if these phrases are governed by 35 U.S.C. § 112(6):<br><br>Function: responsive to user input commands, establishing point-to-point communications between the first and second process over the computer network<br><br>Corresponding Structures:<br>• '704 patent at 5:55-67;<br>• '704 patent at 6:25-7:31, 8:18-22, Fig. 4;<br>• '704 patent at Fig. 8 at blocks 68-72; 10:28-37;<br>• '469 patent at 7:30-42;<br>• '469 patent at 8:1-9:24;<br>• '469 patent at Fig. 8 at blocks 68-72, 12:18- 12:28;<br>• '469 patent at Fig. 16A at blocks 1610-1618;<br>• '469 patent at Fig. 17A at messages 6-8, 9D, 10, 23:56-24:34, 24:65-25:3, 25:20-24; and<br>• equivalents thereof. |
| "program code, responsive to the network protocol address of a second process, for establishing a point-to-point communication link between the first process and the second process over the computer network"<br><br>"program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network" | Not indefinite.  Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, if these phrases are governed by 35 U.S.C. § 112(6):<br><br>Function: responsive to a network protocol address of the second process, establishing point-to-point communications between the first and second process over the computer network |

| | |
|---|---|
| "program code configured to respond to the network protocol address of the second process, establish a point-to-point communication link with the second process over the computer network"<br><br>"program logic configured to, in response to the network protocol address of the second process, establish a point-to-point communication link with the second process over the computer network"<br><br>"program logic, responsive to the network protocol address of the second process, and configured to establish a point-to-point communication link between the first process and the second process over the computer network"<br><br>"program code, responsive to the network protocol address of the second process, for establishing a point- to-point communication link between the first process and the second process over the computer network" | Corresponding Structures:<br>• '704 patent at 5:55-67;<br>• '704 patent at 6:25-7:31, 8:18-22, Fig. 4;<br>• '704 patent at Fig. 8 at blocks 68-72; 10:28-37;<br>• '469 patent at 7:30-42;<br>• '469 patent at 8:1-9:24;<br>• '469 patent at Fig. 8 at blocks 68-72, 12:18- 12:28;<br>• '469 patent at Fig. 16A at blocks 1610-1618;<br>• '469 patent at Fig. 17A at messages 6-8, 9D, 10, 23:56-24:34, 24:65-25:3, 25:20-24; and<br>• equivalents thereof. |
| "program code for transmitting, from the first process to the server process, a query as to whether the second process is connected to the computer network"<br><br>"program code for transmitting, to the server, a query as to whether the second process is connected to the computer network"<br><br>"program code configured to query the address server as to whether the second process is connected to the computer network"<br><br>"program logic configured to query the address server as to whether the second process is connected to the computer network"<br><br>"program logic configured to transmit, to the server, a query as to whether the second | Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, if these phrases are governed by 35 U.S.C. § 112(6):<br><br>Functions: querying the server as to whether a second process is connected to the computer network<br><br>Corresponding Structures:<br>• '704 patent at 5:55-56;<br>• '704 patent at 10:7-18;<br>• '469 patent at 23:63-66, Table 6;<br>• '469 patent at 11:65- 12:1;<br>• '469 patent at 12:18-23;<br>• '469 patent at 18:38-42; and<br>• equivalents thereof. |

| | |
|---|---|
| process is connected to the computer network"<br><br>"program code for querying the server as to the on-line status of the first callee process" | |
| "program code, responsive to association of the element representing the first callee process with the element representing the communication line having a temporarily disabled status, for temporarily disabling the point-to-point communication  link between the caller process and the first callee process"<br>('704 Claim 27) | Not indefinite.  Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, if these phrases are governed by 35 U.S.C. § 112(6):<br><br>Function: temporarily disabling the point-to-point communication link between the caller process and the first callee process<br><br>Corresponding Structures:<br>• '704 patent at 8:57-58; and<br>• equivalents thereof. |

## IX.   CONCLUSION

For the foregoing reasons, Straight Path's proposed construction for the term "point-to-point" should be adopted, the remainder of the disputed claim terms read according to their plain and ordinary meaning, and Amazon's §112, ¶6 contentions should be rejected.

Date: October 23, 2017                    Respectfully submitted,

                                          By */s/ Craig C. Reilly*
                                          Craig C. Reilly (VSB # 20942)
                                          111 Oronoco Street
                                          Alexandria, Virginia 22314
                                          Telephone: (703) 549-5354
                                          Facsimile: (703) 549-5355
                                          craig.reilly@ccreillylaw.com


                                          **MINTZ, LEVIN, COHN, FERRIS,
                                          GLOVSKY AND POPEO PC**
                                          Michael T. Renaud (*admitted pro hac vice*)
                                          Michael J. McNamara (*admitted pro hac vice*)
                                          William A. Meunier (*admitted pro hac vice*)
                                          Michael C. Newman (*admitted pro hac vice*)
                                          Robert J. L. Moore (*admitted pro hac vice*)
                                          Nicholas W. Armington (*admitted pro hac vice*)
                                          Kristina R. Cary (*admitted pro hac vice*)
                                          Mintz, Levin, Cohn, Ferris, Glovsky
                                          and Popeo, P.C.
                                          One Financial Center
                                          Boston, MA 02110
                                          Phone: (617) 542-6000
                                          Fax: (617) 542-2241
                                          mtreaund@mintz.com
                                          mjmcnamara@mintz.com
                                          wameunier@mintz.com
                                          mcnewman@mintz.com
                                          rjmoore@mintz.com
                                          nwarmington@mintz.com
                                          krcary@mintz.com

                                          *Attorneys for Straight Path IP Group, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd of October, 2017, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.


/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com


*Attorneys for Plaintiff Straight Path IP Group, Inc.*